IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **WILLIE HICKS**<br>C/O 3100 E. 45th St., Ste.322<br>Cleveland, Ohio 44127 | ) CASE NO. 1:22-cv-01587<br>)<br>)<br>) JUDGE SOLOMON OLIVER JR. |

**WILLIE HICKS**
C/O 3100 E. 45th St., Ste.322
Cleveland, Ohio 44127                          ) CASE NO. 1:22-cv-01587
                                               )
-and-                                          )
                                               ) JUDGE SOLOMON OLIVER JR.
**MARTAZE L. BURRELL**                          )
C/O 3100 E. 45th St., Ste.322                  ) AMENDED COMPLAINT
Cleveland, Ohio 44127                          )
                                               )
                                Plaintiffs,    ) JURY DEMAND ENDORSED
                                               ) HEREON
        -vs-                                   )
                                               )
**DAVID YOST**                                  )
150 E Gay St Ste 22, Columbus, OH              )
43215                                          )
                                               )
        -and-                                  )
                                               )
**DWIGHT HOLCOMB**                              )
4055 Highlander Pkwy, Richfield, OH            )
44286                                          )
                                               )
        -and-                                  )
                                               )
**CITY OF GARFIELD HEIGHTS**                    )
555 Turney Road                                )
Garfield Heights, Ohio 44125                   )
                                               )
        -and-                                  )
                                               )
**SGT. RONALD DODGE**                           )
555 Turney Road                                )
Garfield Heights, Ohio 44125                   )
                                               )
        -and-                                  )

1

**PTL. PETER STOCKHAUSEN**                    )
555 Turney Road                               )
Garfield Heights, Ohio  44125                 )
                                              )
    -and-                 )
                                              )
**CITY OF EAST CLEVELAND**                    )
14340 Euclid Avenue,                          )
East Cleveland, Ohio 44112                    )
                                              )
    -and-                 )
                                              )
**MICHAEL CARDILLI**                          )
14340 Euclid Avenue,                          )
East Cleveland, Ohio 44112                    )
                                              )
    -and-                 )
                                              )
**LARRY MCDONALD**                            )
14340 Euclid Avenue,                          )
East Cleveland, Ohio 44112                    )
                                              )
    -and-                 )
                                              )
**TRAVIS KESECKER**                           )
14340 Euclid Avenue,                          )
East Cleveland, Ohio 44112                    )
                                              )
    -and-                 )
                                              )
**PHILLIP HOWELL**                            )
14340 Euclid Avenue,                          )
East Cleveland, Ohio 44112                    )
                                              )
    -and-                 )
                                              )
**JOSEPH MARCHE**                             )
14340 Euclid Avenue,                          )
East Cleveland, Ohio 44112                    )
                                              )
    -and-                 )
                                              )

**KENNETH DESALVO LUNDY,**                    )
**AKA     KENNETH     DESALVO**                    )
**SCOTT,**                                                           )
**AKA     KENNETH     DESALVO**                    )
**JOHNSON**                                                    )
14340 Euclid Avenue,                                   )
East Cleveland, Ohio 44112                      )
                                                                     )
                                       Defendants.     )

Plaintiffs Willie Hicks and Martaze Burrell, on behalf of themselves and

members of the proposed Classes below and by and through counsel McNeal

Legal Services, LLC state as follows for their Complaint against the above-named

Defendants:

## **INTRODUCTION**

1.      A public records campaign undertaken by grassroots community

organizers has uncovered a disturbing pattern and practice of agencies

throughout the entire State of Ohio falsely reporting critical areas of statutorily

mandated police officer training.

2.      Ohio Revised Code 109.803(A)(1)(2) requires that every police

officer in the state of Ohio complete a certain amount of continuing professional

training (hereinafter "CPT") every calendar year. Additionally, Ohio Revised Code

Section 109.801 requires peace officers to qualify with each and every duty

weapon assigned to them on an annual basis.

3.      Failure to adhere with these, and other statutorily mandated

training requirements forces a peace officer into cease function status where they

are prohibited from wearing a badge, carrying a firearm, and performing police functions. Such officers are in what is called 'cease function' status, and these officers would have no more legal authority to arrest an individual than an average citizen would have, under the same circumstances.

4.      Every Peace Officer or Trooper in the State of Ohio is required to obtain written permission from the Executive Director of the Ohio Peace Officer Training Academy (hereinafter "OPOTA") if they do not meet the required amount of CPT for a given year.

5.       Pursuant to the R.C. 109.803, only in extreme emergencies can an extension be granted to peace officer and troopers who failed to take mandated training.

6.      Peace officers and troopers that have not obtained an extension of time to take mandated training are prohibited from engaging in law enforcement and carrying firearms enter into "cease function" status. Persons entering into cease function status can only be restored by the Executive Director of the Ohio Peace Officers Training Academy.

7.      The State of Ohio, The Attorney General's Office, OPOTA, the individual police departments and municipalities have all failed to track the training of Ohio's peace officers and been deliberately indifferent to the failures of its officers and their police departments to adhere to the statutory mandates, and to comply in good faith with rules regarding hourly training requirements. This deliberate indifference to the risk of untrained police officers assaulting

citizens is the moving force behind the Fourth and Fourteenth Amendment violations complained of within.

8.     Upon information gleaned from public records, hundreds of agencies throughout the state, each of which have received thousands of dollars in reimbursement funding have not complied with statutorily mandated hours of critical training. Many of these mandated training topics include such pressing issues such as Use of Force, De-Escalation, and Constitutional Policing.

9.     The direct result is that scores of Ohio Police Officers such as Defendant Police Officers, are illegally arresting defendant's misdemeanor offenses, and using excessive force and unconstitutional police strategies because of their willful refusals to take state mandated training.

10.     Defendant David Yost (Hereinafter "Yost") during his tenure as state auditor, and in his current tenure as Attorney General knew that OPOTA/OPOTC had failed to track funding and failed to track peace officers and troopers who had not complied with the law governing training and disbursement and casino funds. Yost has failed in his duty as auditor and Chief Law Enforcement Officer for the State of Ohio by not removing persons who are unlawfully engaging in law enforcement, and who have failed to take specific critical and  mandated training.

11.     Defendant Dwight Holcomb (Hereinafter "Holcomb") serves as the current Executive Director of OPOTA/OPOTC. During Holcomb's tenure as executive director he has failed to address cease function issues that he inherited

and has failed to audit departments he has reason to know are not complying with statutory mandates regarding police officer training.

12.     Holcomb has failed to enforce the OAC requiring agencies to timely submit documentation of training completion, and upon information and belief has instructed departments *not* to comply with the law.

### Willie Hicks

13.     On October 3, 2021, Patrolman Ronald Dodge attempted to murder Plaintiff Willie Hicks. Mr. Hicks, then a 20-year-old resident of Maple Heights was leaving the apartment complexes in the vicinity of The Smartland apartments located at 4623 E. 131st Street in Garfield Heights, OH. Mr. Hicks was ordered to stop by Patrolman Peter Stockhausen, also of the Garfield Heights Police Department. Mr. Hicks had committed no traffic violations, nor had he or the vehicle he was driving that day been alleged to have been involved in any criminal activity that day. Nevertheless, Patrolman Stockhausen ordered Mr. Hicks to stop his vehicle, and Mr. Hicks complied with this request.

14.     Upon Mr. Hicks stopping his vehicle, Patrolman Stockhausen ordered Mr. Hicks to turn off his engine. Mr. Hicks asked Patrolman Stockhausen why he was being detained, and attempted to explain to the officer that he had nothing to do with anything the police were investigating on the scene.[1] Patrolman Stockhausen never asked Plaintiff to identify himself, instead he immediately

---

[1] It would turn out that neither Plaintiff, nor any of the other African-American males detained that date had anything to do with the alleged shooting incident in the parking lot.

attempted to force Mr. Hicks out of his vehicle.[2] Mr. Hicks was terrified that the Garfield Police were going to kill him like so many other young African-American men who have been gunned down unjustifiably by police officers across the United States, and in Northeast Ohio particularly.

15.     In palpable fear of his life due to the unlawful seizure of his person, Mr. Hicks attempted to flee the scene in his vehicle. Two police cruisers were parked near the exit to the apartment complex blocking the entrance. A civilian SUV was parked next to these cruisers. All the vehicles were unoccupied. Plaintiff attempted to drive through a gap between the vehicles at low speed, and away from the direction of other persons on the scene. At no time did Plaintiff drive his vehicle towards any officers on the scene.

16.     At this time, there was no immediate threat to Patrolman Dodge, Patrolman Stockhausen, nor any other police officer or citizen on the scene. Nevertheless, Patrolman Dodge[3] fired his service weapon 12 times into the front driver-side vehicle compartment. None of the other officers on the scene discharged their weapons.

17.     Plaintiff suffered 8 gunshot wounds to his torso and upper

---

[2] Defendant Stockhausen has a disciplinary history of unlawfully searching and seizing citizens.

[3] Upon information and belief, PTL. Dodge has been involved in at least one other officer-involved shooting where it is believed a citizen was killed. Ptl. Dodge has also been accused of using excessive force against a pregnant detainee, and has been disciplined for acts of dishonesty, negligently discharging his service weapon, and negligently operating his patrol car. Defendant City of Garfield Heights promoted to the rank of sergeant in June of 2022.

extremities. After being shot, Plaintiff's vehicle passed through the gap between the police cruisers, continuing straight in the path the vehicle had been travelling, and came to rest uneventfully into the side of a brick building. Plaintiff crawled out of his vehicle, unable to walk, covered in blood, and crying in pain. He told the officers he was going to die. The entire scenario is captured on Police Body Cameras and Apartment Surveillance Video.

18.     Defendant Dodge should not have ever had an opportunity to shoot Plaintiff Hicks because he should have been in cease function status since *2007*, as his training records indicate he failed to comply with mandated training requirements of the time and did not seek nor receive an extension. But for the deliberate indifference of the State of Ohio, Defendant Yost, Defendant Holcomb, and others , Plaintiff Hicks would not have suffered this assault on himself.

19.     Unfortunately, Plaintiff Hicks is but one of many Ohioans who have been assaulted by police officers who either would not or could not de-escalate an arrest because they didn't care to even take the state mandated training. The State has deliberately indifferent to the foreseeable civil rights violations and tortious conduct experienced by other class members such as Plaintiff Hicks. These policies, patterns, practices and or customs were the moving force behind the tortious conduct committed by defendant officers.

20.     This is a civil rights action for the violations against Plaintiff Hicks arising from his unlawful detention and attempted murder at the hands of the Garfield Heights Police Department. The egregious conduct of these Defendant

Officers is prima facie evidence of a willful and wanton violation of Mr. Hick's constitutional rights, a reckless disregard for the same, or a deliberate indifference to his right to be free from summary execution and the excessive use of force.

21.     Defendant City of Garfield Heights (hereinafter referred to as "GH"), failed to properly train, supervise, discipline, and remove persons that entered into cease function and were prohibited from functioning as peace officers. Sgt. Ronald Dodge is one such police officer who should have been in cease function status. However, due to the combined negligence, deliberate indifferences, and other malfeasance of Defendants Ohio, Yost, Holcomb, and GH, he was able to use his status as a police officer to shoot and brutalize Plaintiff Willie Hicks and violate his constitutional rights.

22.     The flagrant attempt on Plaintiff's life by Patrolman Dodge demonstrates the failures of the State and OPOTA, and also either a failure of Defendant City to properly train or supervise Defendant Officers, an act of negligent hiring and retention, or a policy of Defendant City of Garfield Heights to tolerate and affirm a police culture that revels in oppressing the civil rights of its minority citizens, and/or a callous disregard to the same.

23.     Defendant Officers are responsible for gravely injuring Plaintiff Hicks and causing him unbearable psychological and emotional trauma. Further, the collective failures of Defendants Yost and Holcomb to duly enforce statutorily mandated police training created an environment that promotes police misconduct; thus, ratifying and condoning unconstitutional policies and practices

of the Garfield Heights Police Department. Their collective acts and omissions are the moving force behind the violations alleged in this complaint, and they are also responsible for the excessive use of force being used against too many citizens of Garfield Heights, Ohio, and the entire State at large; particularly the class of African-American citizens, of which Plaintiff Hicks is a member. The Defendants are therefore liable for Plaintiff's injuries.

**MARTAZE BURRELL**

24.     Defendant East Cleveland (hereinafter referred to as "EC"), and Defendants Yost and Holcomb failed to properly train, supervise, discipline, and fire persons that entered into cease function and were prohibited from functioning as peace officers.

25.     Defendant EC has a pattern, practice and custom of habitually reporting to the State of Ohio compliance with training requirements and has received reimbursement funding from the Law Enforcement Fund. [4]

26.     Upon conducting an audit, the Executive Director confirmed the 2015-2017 persons reported to the State on continued professional training rosters and received reimbursement funding, The East Cleveland Police Department (hereinafter referred to as "ECPD"), had not taken the statutorily mandated training pursuant to Ohio Administrative Code § 109:2-18-03 and was

---

[4] We would be remiss not to report that seven(7) East Cleveland Police Officers have been indicted for various felonies in Cuyahoga County Ohio, and the municipality is being criminally investigated by other agencies.

required to repay the funds.

27.     All Defendant East Cleveland Police Officers knowingly continued to act as peace officers and carry firearms within their municipalities in violation of the enumerated Ohio Revised Code and Ohio Administrative Code sections, without legal authority to do so. Plaintiff Martaze Burrell (hereinafter referred to as "Burrell") has been permanently and irreparably damaged by the failure of East Cleveland to properly train, supervise, ,discipline, and fire  these bad actors.

## JURISDICTION AND VENUE

28.     This action is brought pursuant to claims arising under the laws of the State of Ohio, 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the United States Constitution. This action is also brought pursuant to 28 U.S.C. §§ 1983, 1985 and 1988 as it is also an action for compensatory damages, punitive damages, and attorney fees.

29.     Venue is proper in this as the parties reside, or at the time the events took place, resided in this judicial district, and the events giving rise to Plaintiffs' claims also occurred in this judicial district.

## PARTIES

30.     Plaintiff, Willie Hicks ("Plaintiff Hicks"), is an Ohio citizen, with permanent residence in Cuyahoga County, Ohio.

31.     Plaintiff Burrell is an Ohio citizen with permanent residence in Cuyahoga County, Ohio.

32.     Defendant Yost is the Attorney General of Ohio. He is responsible for enforcing the laws of Ohio and supervising the training of peace officers in the entire state. He is sued in his official capacity. Yost has failed in his duty as auditor and Chief Law Enforcement Officer for the State of Ohio by not removing persons who are unlawfully engaging in law enforcement, and who have failed to take specific critical and  mandated training.

33.     Defendant Dwight Holcomb (Hereinafter "Holcomb") serves as the current Executive Director of OPOTA/OPOTC. During Holcomb's tenure as executive director he has failed to address cease function issues that he inherited and has failed to audit departments he has reason to know are not complying with statutory mandates regarding police officer training. Holcomb has failed to enforce the OAC requiring agencies to timely submit documentation of training completion, and upon information and belief has instructed departments not to comply with the law. He is sued in his official capacity.

34.     Defendant Sergeant Ronald Dodge ("Defendant Dodge") was, at the time of this occurrence, a police officer employed by the City of Garfield Heights and engaged in the conduct complained of in the course and scope of his employment with the City of Garfield Heights. He is being sued in his official and individual capacity.

35.     Defendant Patrolman Peter Stockhausen ("Defendant Stockhausen") was, at the time of this occurrence, a police officer employed by the City of Garfield Heights and engaged in the conduct complained of in the

12

course and scope of his employment with the City of Garfield Heights. He is being sued in his official and individual capacity.

36.     At the times material to this complaint, Defendant Dodge and Defendant Stockhausen (hereinafter collectively referred to as "Defendant Officers"), were acting under color of state law, ordinance, and/or regulation. Each is being sued in their individual and official capacity.

37.     Defendant City of Garfield Heights ("Defendant City") is a municipal corporation, duly incorporated under the laws of the State of Ohio, is the employer and principal of Defendant Officers, and is responsible for the policies, practices and customs of its Police Department and City Council. Defendants Dodge and Stockhausen are collectively referred to herein as Defendant Garfield Officers.

38.     Defendant Michael Cardilli ("Defendant Cardilli") was, at the time of this occurrence, The Chief of Police for EC and engaged in the conduct complained of in the course and scope of his employment with the City of EC. Most notably, Defendant Cardilli falsely and intentionally misrepresented to OPOTA that the Defendant Officers had complied with their annual CPT requirements, when he knew, or should have known that they had not.

39.     Defendant Larry McDonald ("Defendant McDonald") was, at the time of this occurrence, unlawfully employed by the City of EC as a police officer, and engaged in the conduct complained of in the course and scope of his employment with the City of EC. Cardilli re-hired MacDonald without sending an

13

appointment letter to OPOTA as required by Ohio Revised Code § 109.761, until a full year *after* he was placed in service.

40.     Defendant Travis Kesecker ("Defendant Kesecker") was, at the time of this occurrence, unlawfully employed by the City of EC as a police officer, and engaged in the conduct complained of in the course and scope of his employment with the City of EC.

41.     Defendant Phillip Howell ("Defendant Howell") was, at the time of this occurrence, unlawfully employed by the City of EC as a police officer, and engaged in the conduct complained of in the course and scope of his employment with the City of EC.

42.     Defendant Joseph Marche ("Defendant Marche") was, at the time of this occurrence, unlawfully employed by the City of EC as a police officer, and engaged in the conduct complained of in the course and scope of his employment with the City of EC.

43.     Defendant Kenneth DeSalvo Lundy, AKA Kenneth DeSalvo Scott, AKA Kenneth DeSalvo Johnson ("Defendant Lundy") was, at the time of this occurrence, unlawfully employed by the City of EC as a police officer, and engaged in the conduct complained of in the course and scope of his employment with the City of EC.

44. At the times material to this complaint, Defendants McDonald, Defendant Kesecker, Defendant Howell, Defendant Marche and Defendant Lundy (hereinafter collectively referred to as "East Cleveland Defendant

Officers"), were acting under color of state law, ordinance, and/or regulation. Each is being sued in their individual capacity.

45.     Defendant City of East Cleveland ("EC") is a municipal corporation, duly incorporated under the laws of the State of Ohio, is the employer and principal of Defendant Officers, and is responsible for the policies, practices and customs of its Police Department and City Council.

## FACTS

### *Burrell*

46.     Plaintiff reincorporates the preceding paragraphs as though fully re-written herein.

47.     On October 29, 2017, Burrell's best friend, Steven Swain, seventeen (17) years old, was brutally murdered in the City of East Cleveland, Ohio. Burrell also seventeen (17) was home with his family.

48.     Patrol Officer Demarko Johnson (hereinafter referred to as "Johnson") responded to the call and found Swain lying in the street with multiple gunshot wounds to the head and body.  Johnson observed Swain take his last breath when he reached him.

49.     Johnson called the event in, and all Defendants mentioned above arrived at the scene of the killing.

50.     Defendant Lundy became the lead investigator on the case of Swain's murder.

51.     Investigatory records show Burrell was never a suspect in the

murder until May 3, 2018.

52.    On that day Lundy and the Defendant officers initiated an illegal and pretextual traffic stop on Burrell so they could "talk to him."

53.    On May 3, 2018, at approximately 4:34 P.M., Burrell was driving a 2006 Nissan Murano that belonged to his girlfriend who was also present during the "traffic stop".

54.    Burrell and his girlfriend were on their way to work at a pizza shop when Burrell stopped in front of the City of East Cleveland building at a red light.

55.    Defendant officers acting as peace officers surrounded the vehicle with high powered arms. Burrell with his foot on the brakes was forcibly removed from the vehicle by Travis Kesecker (hereinafter referred to as "Kesecker").

56.    Upon snatching the youth from the vehicle Kesecker slammed Burrell to the ground causing facial lacerations, bruises, and other physical harm. The vehicle began rolling and struck a vehicle that Defendant McDonald had used to block the vehicle in.

57.    Kesecker yelled "gun" and allegedly removed a nine (9) millimeter Taurus from the person of Burrell. Marche, Lundy, Phillip Howell, and Tyler McClamroch (hereinafter referred to as "Howell" and "McClamroch") were the other persons acting as peace officers that day. No other firearms were found in the vehicle at that time.

58.    Burrell was removed from the scene and taken into custody. Burrell was held in the basement of the East Cleveland jail without being afforded an

attorney or a parent for over four (4) hours, handcuffed to a pole  and questioned by Lundy and Marche regarding the death of Swain. ECPD did not obtain an arrest warrant for Burrell and did not have legal authority to arrest or engage with the youth.

59.     Burrell was transported to the Cuyahoga County Juvenile Detention Center on charges of having a weapon under disability and fictitious plates.

60.     McDonald wrote a ticket for "fictitious" plates and issued a ticket from the ECPD only for the plates. McDonald recorded the correct plate to the vehicle that was on the vehicle and did not cite the owner of the vehicle that was present at the event.

61.     The vehicle was towed to the St. Clair Auto lot. Approximately two (2) weeks after taking Burrell into custody the shop notified ECPD there was a gun visible on the back seat of the car. Burrell was held in the detention center until after his eighteenth birthday when the Cuyahoga County Prosecutor's Office charged Burrell as an adult and with the murder of Swain. ECPD obtained warrants through the prosecutor's office for six months (6) to build a case against Burrell.

62.     In June 2018, a report was released to the public from an advocacy group attesting the ECPD had not obtained proper authority to engage in law enforcement and carry firearms in over a decade.

63.     The group is headed by Burrell's grandmother who had been collecting peace officer files for over six (6) months prior to the arrest of Burrell.

Burrell's maternal grandmother, Mariah Crenshaw (hereinafter referred to as "Crenshaw"), requested peace officer training from the department which was denied. Crenshaw engaged the Ohio Attorney General's Office of Peace Officer Training (hereinafter referred to as "OPOTA") to conduct an audit of the agency's training records.

64.     Burrell was held for four (4) months on weapons under disability charge while the Cuyahoga County Prosecutor's office and the Defendants obtained warrants of Burrell's mother's phone records and Burrell's social media page.

65.     The investigatory report reflects that Lundy had purchased at least two (2) weapons that were the alleged to be the murder weapon of Swain from "unknown" persons within the first forty-five (45) days of the murder.

66.     Lundy identified Daevon Williams, Mikail Minzi, (hereinafter referred to as "Williams" and "Minzi") and other persons of interest in the slaying of Swain. Burrell was never recorded as a person of interest until May 3, 2018, when allegedly a Confidential Informant notified Lundy the gun was in the vehicle Burrell was driving.

67.     There are no further investigatory notes stating Burrell was the suspected murderer of Swain. Lundy and the Cuyahoga County Prosecutor's Office did not begin to build a case against Burrell until after Crenshaw went public with the cease function status of the agency.

68.     On March 28, 2022. Plaintiff Burrell was acquitted at trial of Steve

Swain's murder. At the time of this filing, no less than seven East Cleveland Police Officers, including Defendant Cardilli, are under indictment for crimes committed in their capacity as police officers.

### Hicks

69.     On October 3, 2021, at approximately 3:00 AM, Defendant Garfield Officers were responding to an incident in the vicinity of 4623 E.131st. St. in Garfield Heights, Ohio. Around 3:15 AM, Plaintiff Hicks was leaving the apartment complexes located at 4623 E.131st. St. in Garfield Heights, Ohio.

70.     Defendant Stockhausen ordered Plaintiff Hicks to stop his vehicle as he drove past him. Plaintiff Hicks complied with this request and stopped his vehicle.

71.     Plaintiff Hicks informed Defendant Stockhausen that he did not witness any criminal activity in the area. Defendant Stockhausen never asked Plaintiff Hicks to identify himself. Defendant Stockhausen ordered Plaintiff to turn off his engine.

72.     Plaintiff Hicks again attempted to explain to Defendant Stockhausen that he neither participated in nor witnessed anything which could have been the reason that the Garfield Heights Police Department was on scene. Nevertheless, Defendant Stockhausen never asked Plaintiff to identify himself or explain to Plaintiff why his car was stopped and why he was being detained.

73.     Rather than dignifying Plaintiff Hicks with a rationale for his order to shut off his vehicle, or asking Plaintiff to identify himself, Defendant

Stockhausen persisted to pull on Plaintiff's door-handle in an attempt to forcibly remove him.

74.     Defendant Stockhausen had no probable cause to arrest or detain Plaintiff Hicks under the circumstances. Defendant Stockhausen ordered Plaintiff hicks to stop his vehicle, and Plaintiff Hicks obliged. Defendant Stockhausen never asked Plaintiff to identify himself, instead he immediately attempted to seize and detain Plaintiff unlawfully.

75.     Defendant Stockhausen failed to act within the confines of the United States Constitution, the Constitution of the State of Ohio, as well as R.C. 2921.29 and other relevant law.

76.     Plaintiff Hicks immediately feared that Defendant Stockhausen was violating his civil rights, and that he and the other Garfield Heights Police Officers would cause him death or gross bodily harm, as many other similarly-situated African-Americans have suffered at the hands of police officers across Northeast Ohio and the United States of America at large.

77.     Plaintiff Hicks reasonably believed that his constitutional and statutory rights were being violated. Plaintiff Hicks feared that Defendant Officers would continue to egress upon his rights, use excessive force upon him in order to unlawfully detain him, and that his life was in jeopardy. He reasonably believed he had no choice but to flee the unlawful seizure in order to save his life.

78.     Two unmanned police cruisers were blocking the exit to the apartment complex. Plaintiff Hicks attempted to drive his vehicle in between

these vehicles at a low rate of speed. After initially being unable to navigate in between the vehicles, Plaintiff  backed up, and again proceeded to attempt to drive in between the vehicles at a low rate of speed.

79. Defendant Dodge was positioned behind an empty police cruiser at a 45° angle away from Plaintiff's vehicle. At no time was Defendant Dodge, nor any other police officer, nor any other person in the path of Plaintiff's vehicle. Furthermore, Defendant Dodge was positioned behind a police cruiser. There was also ample space and opportunity for Defendant Dodge to move out of the path of the vehicle should he had needed to do so. In sum, there is no objectively reasonable threat that Defendant Dodge was in danger of being struck by Plaintiff's vehicle.

80. Despite no objectively reasonable threat to himself, a fellow officer, or any other person, Defendant Dodge fired his gun twelve times inside of the front driver side cabin of Plaintiff's vehicle. Defendant Dodge's use of deadly force was objectively unreasonable as no other officers on scene discharged their weapons.

81. Plaintiff Hicks was struck eight times by Defendant Dodge. His vehicle drove through the police cruisers safely bypassing Defendant Officers and came to a rest after rolling into a brick structure.

82. Plaintiff Hicks crawled out of his vehicle, unable to walk, and pleaded for his life. Plaintiff Hicks told the officers he thought he was going to die.

83.    Plaintiff Hicks has and continues to suffer severe physical pain, psychological trauma, and emotional pain as he attempts to recover from these excessive police brutality committed against him.

84.    Public Records reveal that Defendant Dodge should have been in cease function status years prior to the shooting of Plaintiff Hicks as he failed to comply with statutory mandates and OPOTA. But for the deliberate indifference of Defendant Ohio, Yost, and Holcomb, Plaintiff Hicks would have never been shot by Defendant Dodge.

<u>PROPOSED CLASSES</u>

Hicks Class

All Ohio citizens assaulted, battered and/or suffered the excessive use of force by Ohio Peace Officers who were or should have been in cease function status by operation of The Ohio Revised Code and Ohio Administrative Code.

Burrell Class

All Ohio citizens who have been arrested for misdemeanor crimes by peace officers who were or should have been in cease function status by operation of The Ohio Revised Code and Ohio Administrative Code

85.    **Fed. R. Civ. P. 23(a)(1)—Numerosity / Impracticality of Joinder:** The proposed Classes are so numerous that joinder of all Class Members is impracticable. On information and belief, there are hundreds of Class Members in each proposed Class, all of whom are or were subject to the torts and constitutional rights violations set forth herein and therefore face a significant risk of death and injury.

86. Class members are identifiable using records maintained in the ordinary course of business by the Ohio Attorney General's Office, as well as Defendant Cities and Police Departments. .

87. **Fed. R. Civ. P. 23(a)(2)—Commonality:** Common questions of law and fact exist as to all proposed Class Members. Among the common questions are, including but not limited to:

   a. Whether peace officers who were in cease function status pursuant to Ohio revised Code Sections such as R.C. 109.803 committed torts, assaults, civil rights violations and other injuries to Burrell class members when they arrest Ohio citizens for misdemeanor offenses.

   b. Whether the deliberate indifference of Defendants Yost and Holcomb; or their, pattern of turning a blind eye;  or knowing disregard of Ohio police officers and departments willfully not complying with statutory and administrative codes sections , result in constitutionally cognizable harm or present a constitutionally unacceptable risk of harm to both classes.

   c. Whether Defendants unreasonably instituted or condoned an environment that promotes lawless policing, the excessive use of force, and other constitutional rights violations being committed against the mostly African-American class.

   d. Whether Defendants have been deliberately indifferent to the actual

and serious risk of death and gross bodily harm by Hicks Class
Members.

e. Whether Defendants maintain a policy, custom, and/or widespread
practice of violating Class Members' constitutional rights through
exposure to the dangerous conditions in the communities these
renegade police officers patrol.

f. Whether the arrest by a cease function  police officer violates the
Fourth Amendment's prohibition against unreasonable searches
and seizures.

g. Whether Class Members due process rights are violated when they
are arrested by Officers with no legal authority to perform police
duties.

88.     **Fed. R. Civ. P. 23(a)(3)—Typicality:** The claims of the Plaintiffs
are typical of other members of the Classes, as their claims from the same
policies, practices, and courses of conduct, and their claims are based on the
same theory of law as the class claims.

89.      Further, Defendants are expected to raise common defenses to
these claims, so that final relief is appropriate for both Classes.

90.     **Fed. R. Civ. P. 23(a)(4)—Adequacy of Representation:**
Plaintiffs will fairly and adequately represent the interests of the Classes and will
serve diligently as class representatives. Their interests are aligned with those of
the purported Classes and they have retained counsel experienced in civil rights

litigation, litigation involving rights of Ohioans who have been victimized by illegal police forces, and matters of public and social importance to Black Lives.

91.     This action is maintainable as a class action because Defendants have acted or refused to act on grounds that generally apply to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

92.     Fed. R. Civ. P. 23(b)—Both the Hicks and Burrell Classes should be certified under Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The illegal conduct is standardized; the Class Members do not have an interest in individually controlling the prosecution of the case; and there are no cases that have been brought by Class Members.

93.     Proceeding as a class action would permit the large number of injured parties to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of evidence, effort, and judicial resources. A class action is the only practical way to avoid the potentially inconsistent results that numerous individual trials are likely to generate. Numerous repetitive individual actions would also place an enormous burden on the courts, as they would be forced to take duplicative evidence and repeatedly decide the same issues concerning Defendants' conduct.

94.     The Classes should also be certified under Federal Rule of Civil Procedure 23(b)(1) and/or (b)(2) because:

     a.  The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members that would establish incompatible standards of conduct for Defendants.

     b.  The prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

     c.  Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the Class Members as a whole.

95.     Alternatively, this case can be maintained as a class action with respect to particular issues under Federal Rule of Civil Procedure 23(c)(4).

## **Plaintiff Hicks Claims for Relief**

### **FIRST CLAIM FOR RELIEF – 42 U.S.C. § 1983 Claim for Unconstitutional Search and Seizure (Defendants City of Garfield Heights, Defendant Yost, Defendant Holcombe)**

96.     Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully rewritten herein.

26

97.    The actions of Defendant Officers, as alleged in the preceding paragraphs, violated Plaintiffs' rights under the Fourth Amendment to the United States Constitution to be secure in their person against unreasonable searches and seizures, and their right to due process under the Fourteenth Amendment to the United States Constitution, and caused the injuries alleged in this complaint.

98.    The actions of Defendant Officers as alleged in this complaint were the direct and proximate cause of the constitutional violations set forth above and of Plaintiffs injuries.

99.    Defendant Officers acted under color of law and within the scope of their employment when they took these actions.

100.    As a direct and proximate cause of Defendant Officers' misconduct, Plaintiff suffered and continues to suffer injury and damages as set forth in this complaint.

101.    The deliberate indifference of OPOTA, The State of Ohio, and Defendants Yost and Holcomb was the moving force behind these violations of Defendant Officers. These defendants knew or should have known that police officers across the state were not being trained for modern policing. Their actions indicate a gross departure from decency as they failed to care enough about the class of individuals such as Plaintiff Hicks to do anything about police violating their rights.

**SECOND CLAIM FOR RELIEF- 42 U.S.C. § 1983 *Monell* Policy Claim
(Defendant City of Garfield Heights, Defendant Yost, Defendant
Holcombe)**

102.     Plaintiff hereby incorporates by reference all preceding paragraphs
as if fully rewritten herein.

103.     The actions of Defendant Officers, as alleged above, were taken
pursuant to one or more interrelated de facto policies (even if not official written
edicts), practices and/or customs of civil rights violations and unconstitutional
practices of the City of Garfield Heights and its Police Department.

104.     The City of Garfield, at all times relevant herein, approved,
authorized, and acquiesced in the unlawful and unconstitutional conduct of its
respective employees and/or agents and consequently is directly liable for the
acts of those agents, pursuant to 42 U.S.C. § 1983.

105.     Despite the facts and circumstances surrounding the arrest of
Plaintiff, that clearly demonstrate that the actions of Defendant Officers were
unreasonable and unlawful, upon information and belief, the City of Garfield
Heights has failed to effectively investigate or impose any discipline on the
Defendant Officers for their illegal behavior.

106.     At all times material to this complaint, Defendant City and its Police
Department had interrelated de facto policies, practices, and customs which
included, *inter alia*:

                    a.     The failure to properly hire, train, supervise,

                           discipline, transfer, monitor, counsel and/or

28

otherwise control City of Garfield Heights
police officers who engage in unjustified use of
excessive and unreasonable force and
malicious prosecution;

b.   The police code of silence;

c.   The encouragement of excessive and
unreasonable force and malicious prosecution,
particularly against African-American citizens;

d.   The failure to properly investigate the use of
excessive and unreasonable force and
malicious prosecution against civilians by City
of Garfield Heights police officers;

e.   The failure to properly discipline, supervise,
monitor, counsel or otherwise control City of
Garfield Heights police officers who engage in
unjustified use of excessive and unreasonable
force for malicious prosecution; and/or

f.   The failure to properly train and supervise City
of Garfield Heights police officers with regard
to constitutionally sound measures regarding
the use of force when effecting an arrest.

107.   The aforementioned de facto policies, practices, and customs of the

Garfield Heights Police Department include a pattern of acts of excessive use of force and malicious prosecution, and other willful, wanton, and/or reckless behavior, leading to harmful consequences to citizens, particularly African-American citizens as a class, of which Plaintiff Hicks is a member.

108.   The Garfield Heights Police Department has engaged in little or no meaningful disciplinary action in response to this pattern of misconduct, thereby creating a culture or climate that members of the department can escape accountability with impunity. To the contrary, Defendant City ratified Defendant Dodge's unlawful and unconstitutional conduct by promoting him to the rank of sergeant just months after he had shot Plaintiff Hicks, and two years after he was disciplined for lying to a superior officer about his police duties.

109.   This pattern of deliberate indifference and condonation is the moving force behind the conduct of Defendant Officers in searching, seizing, and brutalizing Plaintiff, which was not an isolated incident of unconstitutional policing within the City of Garfield Heights by its officers.

110.   The policy, practice, and custom of a police code of silence results in police officers refusing to report instances of police misconduct of which they are aware, including unlawful searches, seizures, and prosecutions, despite their obligation under police regulations to do so, and also includes police officers either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability or criminal charges, in cases where they and their fellow

officers engaged in misconduct.

111.    The de facto policies, practices and customs of failing to hire, train, supervise, monitor, discipline, transfer, counsel and/or control police misconduct and the code of silence are interrelated and exacerbate the effects of each other, to institutionalize police lying and immunize police officers from discipline.

112.    That the unconstitutional actions of Defendant Officers as alleged in this complaint were part and parcel of a widespread municipal policy, practice and custom is further established by the involvement in, and ratification of, these acts by municipal supervisors and policy makers, as well as by a wide range of other police officials, officers, and divisions of the Department.

113.    The policies, practices and/or customs alleged in this complaint, separately and together, are the proximate cause of the injury to Plaintiff, because Defendant Officers had good reason to believe that their misconduct would not be revealed or reported by fellow officers or their supervisors, and that they were immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct.

114.    But for the belief that they would be protected, both by fellow officers and by the City of Garfield Heights Police Department from serious consequences, Defendant Officers would not have engaged in the conduct that resulted in the injuries to Plaintiff.

115.    Defendant Yost and Holcomb were responsible for enforcing training standards. Their deliberate indifference to the enforcement of these

standards also enabled Defendant City of GH and its officers to use excessive force. Their deliberate indifference/willful blindness also evidences a condonation of the violations occurring herein.

116.    The interrelated policies, practices and customs, as alleged in this complaint, individually and together, were maintained and implemented with deliberate indifference and encouraged Defendant Officers to commit the acts alleged in this complaint against Plaintiff, and therefore acted as the moving forces behind the direct and proximate causes of the injuries to Plaintiff.

### THIRD CLAIM FOR RELIEF- State Law Claim for Willful, Wanton, and Reckless Conduct

117.    Plaintiff hereby incorporate by reference all preceding paragraphs as if fully rewritten herein.

118.    Defendant Officers failed to exercise due care and acted with a malicious purpose and/or in bad faith and/or in a willful and/or wanton and/or reckless manner while engaged in police functions and activities, including but not limited to unreasonable search and seizure and malicious prosecution against Plaintiff.

119.    Defendant Officers, as set forth herein, engaged in negligent, reckless, and/or willful and/or wanton misconduct such that they are not entitled to the immunities set forth in O.R.C. § 2744.01 *et seq*.

120.    Defendant Officers acted under color of state law and within the scope of their employment when they took these actions.

121.     As a direct and proximate cause of Defendant Officers' misconduct, Plaintiff suffered and continue to suffer injuries and damages as set forth in this Complaint.

## FOURTH CLAIM FOR RELIEF- State Law Claim for Assault and Battery

122.     Plaintiff hereby incorporate by reference all preceding paragraphs as if fully rewritten herein.

123.     The actions of Defendant Officers towards Plaintiff created in him the fear and apprehension of an immediate, harmful, and offensive touching and constituted a harmful touching, knowingly and without legal justification.

## FIFTH CLAIM FOR RELIEF- State Law Claim for Intentional Infliction of Emotional Distress

124.     Plaintiff hereby incorporate by reference all preceding paragraphs as if fully rewritten herein.

125.     Defendant Officers engaged in extreme and outrageous behavior as alleged in this complaint.

126.     Defendant Officers intended such conduct to inflict such severe emotional distress upon Plaintiff and knew their conduct would cause Plaintiff severe and serious emotional distress, which was of a nature that no reasonable person could be expected to endure.

127.     Defendant Officers' conduct did, in fact, cause such distress.

128.     As a direct and proximate result of Defendant Officers' outrageous conduct, Plaintiff was injured and suffered actual damages.

**Martaze Burrell Individual Claims for Relief**

**SIXTH CLAIM FOR RELIEF – 42 U.S.C. § 1983 Claim for Excessive Use of Force**
**(Defendant Yost, Defendant Holcomb, Defendant EC, Defendant East Cleveland Police Officers)**

129.    Plaintiff hereby incorporates by reference all preceding paragraphs as if fully rewritten herein.

130.    At the time Defendant Officers kidnapped, assaulted, battered and falsely imprisoned Burrell, none of the Defendant Officers were in compliance with section 109.803 of the Revised Code, and none of them had been granted extensions by the executive director of OPOTA.

131.    R.C. 109.83 provides that:

"Any peace officer or trooper who, in any calendar year, fails to comply with the continuing professional training requirements set forth in paragraphs 109:2-18-01 to 109:2-18-07 of the Administrative Code shall cease carrying a firearm and shall cease performing the functions of a peace officer or trooper until such time as evidence of compliance is filed with the executive director."

132.    At the time that the Defendant Officers arrested Burrell, they only had probable cause that Burrell was possibly driving a car with fictitious plates. Which is a misdemeanor.

133.    Defendant Officers had no legal right to arrest Burrell because they were in cease function status legally and not certified by OPOTA to function as

peace officers and carry weapons due to them all having failed to maintain CPT requirements and being in cease function status.

134.    R.C. 2935.04 does not allow for anyone other than an OPOTA Certified police officer to make a misdemeanor arrest.

135.    Defendant officers  detained Mr. Burrell, a juvenile at the time,  in a manor which hindered his movement and liberty, pulled firearms on him, pulled him out of his vehicle and slammed him on the ground causing injuries, hand-cuffed him, and transported him against his will and without lawful authority to their jail facilities where they continued to interrogate him for hours without wither the assistance of counsel or his parents.

136.    The actions of Defendant Officers, as alleged in the preceding paragraphs, violated Plaintiffs' rights under the Fourth Amendment to the United States Constitution to be secure in their person against unreasonable searches and seizures, and their right to due process under the Fourteenth Amendment to the United States Constitution, and caused the injuries alleged in this complaint.

137.    The actions of Defendant Officers as alleged in this complaint were the direct and proximate cause of the constitutional violations set forth above and of Plaintiffs injuries.

138.    Defendant Officers acted under color of law and within the scope of his employment when he took these actions.

139.    As a direct and proximate cause of Defendant Officers' misconduct, Plaintiffs suffered and continue to suffer injury and damages as set forth in this

complaint.

140.    Defendant Yost and Holcomb were responsible for enforcing

training standards. Their deliberate indifference to the enforcement of these

standards also enabled Defendant City of EC and its officers to use excessive

force. Their deliberate indifference/willful blindness also evidences a

condonation of the violations occurring herein.

141.    Plaintiff Martaze Burrell is one of many of his class of persons who

have been arrested for misdemeanors by "officers" who should have been in legal

cease function. Effectively, each of these arrests is a tort. And the Defendants are

Jointly and Severally liable for the injuries sustained by class members.

**SEVENTH CLAIM FOR RELIEF- 42 U.S.C. § 1983 *Monell* Policy Claim**
**(Defendant Yost, Defendant Holcomb City of East Cleveland)**

142.    Plaintiff hereby incorporates by reference all preceding paragraphs

as if fully rewritten herein.

143.    Defendant EC has an official policy, custom and/or practice of

hiring and promoting police officers who are not in compliance with OPOTA and

other state law regulations governing peace officers.

144.    Defendant Cardilli is the chief of police for EC, and in his role, he

has falsely attested to many of his officers having completed their annual training

requirements despite either knowing they had not or being recklessly indifferent

as to their training status.

145.    Defendant EC knows that many if not most of their police officers

36

do not have the requisite CPT training and should be in cease function status.

146.     Despite EC's knowledge they remain deliberately indifferent to the constitutional rights of the unfortunate citizens who are assaulted and battered by unlicensed police officers on a daily basis.

147.     These policies, customs, patterns and practices by Defendant EC are a moving force before the constitutional rights violations committed against Plaintiff Burrell.

148.     Defendant EC has failed to train and supervise their officers as evidenced by their failure to adhere to Ohio Admin. Code 109:2-18-06. The failure of the city to properly train and supervise its police officer is a moving force behind the constitutional injuries suffered by Plaintiff Burrell.

149.     The City of EC, at all times relevant herein, approved, authorized, and acquiesced in the unlawful and unconstitutional conduct of its respective employees and/or agents and consequently is directly liable for the acts of those agents, pursuant to 42 U.S.C. § 1983.

150.     Despite the facts and circumstances surrounding the arrest of Plaintiff Burrell that clearly demonstrates that the actions of Defendant Officers were unreasonable and unlawful, upon information and belief, the City of EC has failed to effectively investigate or impose any discipline on the Defendant Officers for their illegal behavior.

151.     At all times material to this complaint, Defendant EC and its Police Department had interrelated de facto policies, practices, and customs which

included, *inter alia*:

a. The failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and/or otherwise control City of EC police officers who engage in unjustified use of excessive and unreasonable force and malicious prosecution;

b. The police code of silence;

c. The encouragement of excessive and unreasonable force and malicious prosecution, particularly against African-American citizens;

d. The failure to properly to properly investigate the use of excessive and unreasonable force and malicious prosecution against civilians by City of EC police officers;

e. The failure to properly discipline, supervise, monitor, counsel or otherwise control City of EC police officers who engage in unjustified use of excessive and unreasonable force for malicious prosecution; and/or

f. The failure to properly train and supervise City of EC police officers with regard to OPOTA CPT requirements.

152.    The aforementioned de facto policies, practices, and customs of the EC Police Department include a pattern of acts of excessive use of force and malicious prosecution, and other willful, wanton, and/or reckless behavior, leading to harmful consequences to citizens, particularly African-American citizens as a class, of which Plaintiff Burrell is a member.

153.    The EC Police Department has engaged in little or no meaningful disciplinary action in response to this pattern of misconduct, thereby creating a culture or climate that members of the department can escape accountability with impunity.

154.    This pattern is the moving force behind the conduct of Defendant Officers in searching, seizing, and prosecuting Plaintiff, which was not an isolated incident of unconstitutional policing within the City of EC by its officers.

155.    The policy, practice, and custom of a police code of silence results in police officers refusing to report instances of police misconduct of which they are aware, including unlawful searches, seizures, and prosecutions, despite their obligation under police regulations to do so, and also includes police officers either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability or criminal charges, in cases where they and their fellow officers engaged in misconduct.

156.    The de facto policies, practices and customs of failing to hire, train, supervise, monitor, discipline, transfer, counsel and/or control police misconduct

and the code of silence are interrelated and exacerbate the effects of each other, to institutionalize police lying and immunize police officers from discipline.

157. That the unconstitutional actions of Defendant Officers as alleged in this complaint were part and parcel of a widespread municipal policy, practice and custom is further established by the involvement in, and ratification of, these acts by municipal supervisors and policy makers, as well as by a wide range of other police officials, officers, and divisions of the Department.

158. The policies, practices and/or customs alleged in this complaint, separately and together, are the proximate cause of the injury to Plaintiffs, because Defendant Officers had good reason to believe that his misconduct would not be revealed or reported by fellow officers or their supervisors, and that they were immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct.

159. But for the belief that they would be protected, both by fellow officers and by the City of EC Department from serious consequences, Defendant Officers would not have engaged in the conduct that resulted in the injuries to Plaintiff.

160. Defendant Yost and Holcomb were responsible for enforcing training standards. Their deliberate indifference to the enforcement of these standards also enabled Defendant City of EC.

161. The interrelated policies, practices and customs, as alleged in this complaint, individually and together, were maintained and implemented with

deliberate indifference and encouraged Defendant Officers to commit the acts alleged in this complaint against Plaintiffs, and therefore acted as the moving forces behind the direct and proximate causes of the injuries to Plaintiffs.

## EIGTH CLAIM FOR RELIEF- State Law Claim for Willful, Wanton, and Reckless Conduct

162.    Plaintiff hereby incorporate by reference all preceding paragraphs as if fully rewritten herein.

163.    Defendant Officers failed to exercise due care and acted with a malicious purpose and/or in bad faith and/or in a willful and/or wanton and/or reckless manner while engaged in police functions and activities, including but not limited to unreasonable search and seizure and malicious prosecution against Plaintiff.

164.    Defendant Officers, as set forth herein, engaged in negligent, reckless, and/or willful and/or wanton misconduct such that they are not entitled to the immunities set forth in O.R.C. § 2744.01 *et seq*.

165.    Defendant Officers acted under color of state law and within the scope of his employment when he took these actions.

166.    As a direct and proximate cause of Defendant Officers' misconduct, Plaintiffs suffered and continue to suffer injuries and damages as set forth in this Complaint.

## NINTH CLAIM FOR RELIEF- State Law Claim for Assault and Battery

167.    Plaintiff hereby incorporates by reference all preceding paragraphs

as if fully rewritten herein.

168.    The actions of Defendant Officers towards Plaintiff created in him the fear and apprehension of an immediate, harmful, and offensive touching and constituted a harmful touching, knowingly and without legal justification.

**TENTH CLAIM FOR RELIEF- State Law Claim for False Imprisonment**

169.    Plaintiff hereby incorporates by reference all preceding paragraphs as if fully rewritten herein.

170.    The actions of Defendant Officers were committed with the intention of confining Plaintiff Burrell.

171.    Their actions directly and/or indirectly resulted in such confinement, and at all times relevant Burrell was conscious of his confinement.

**ELEVENTH CLAIM FOR RELIEF- State Law Claim for Intentional Infliction of Emotional Distress**

172.    Plaintiff hereby incorporates by reference all preceding paragraphs as if fully rewritten herein.

173.    Defendant Officers engaged in extreme and outrageous behavior as alleged in this complaint.

174.    Defendant Officers intended such conduct to inflict such severe emotional distress upon Plaintiff and knew their conduct would cause Plaintiff severe and serious emotional distress, which was of a nature that no reasonable person could be expected to endure.

175.    Defendant Officers' conduct did, in fact, cause such distress.

176.     As a direct and proximate result of Defendant Officers' outrageous conduct, Plaintiff was injured and suffered actual damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand that judgment be entered in their favor on all counts and prays the Court award the following relief:

A.  Compensatory damages for the violations of Plaintiffs' and class members' rights;

B.  Punitive damages in an amount to be determined at trial for the willful, wanton, malicious, and reckless conduct of Defendants as applicable under law;

C.  Declaratory and injunctive relief against the Defendant Yost, Defendant Holcomb, Defendant East Cleveland, and Defendant Garfield Heights enjoining policies, practices, and customs shown to encourage the use of excessive and unreasonable force against civilians, and ordering the institution of policies, procedures, and training for these Police Departments to bring them into compliance with constitutional standards;

D.  Attorney fees and the costs of this action and other costs that may be associated with this action pursuant to 42 U.S.C. Section 1988; and

E.  All other relief which this Honorable Court deems equitable and just.

## **JURY DEMAND**

Plaintiff demands a trial by jury pursuant to Ohio Rule of Civil Procedure 38(b)

on all issues so triable.

Respectfully submitted,

*/s/Christopher McNeal, Esq.*
CHRISTOPHER MCNEAL, ESQ. (#0096363)
MCNEAL LEGAL SERVICES, LLC.
3100 E. 45th St., Ste. 322
Cleveland, Ohio  44127
(440) 703-0257 – Telephone
chris@mcneallegalservices.com - Email

*Attorney for Plaintiffs Willie Hicks and Martaze Burrell*

## **CERTIFICATE OF SERVICE**

The undersigned attorney does hereby certify that a copy of this complaint, was served on all named defendants at their addresses of record indicated above in the case capsule By Regular U.S. Mail this 13th Day of October 2022.

*/s/Christopher McNeal, Esq.*
CHRISTOPHER MCNEAL, ESQ. (#0096363)